UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL L HASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-01077-SEB-MJD |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Daniel Hash requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **AFFIRMING** the decision of the Commissioner.

### I.   Procedural History

Hash filed an application for DIB and SSI on November 5, 2008, alleging an onset of disability of July 15, 2008. Hash's applications were denied initially on February 6, 2009, and upon reconsideration on May 27, 2009. Hash requested a hearing, which was held on October 19, 2010 before Administrative Law Judge Ronald T. Jordan ("ALJ"). The ALJ denied Hash's applications on March 24, 2011. The Appeals Council denied Hash's request for review on

March 20, 2012, making the ALJ's decision the final decision for purposes of judicial review. Hash filed his complaint with this court on August 6, 2012.

## II.     Factual Background

Daniel Hash was 21 years old on the alleged onset date of disability. He was diagnosed with Trichorhinophalangeal Syndrome ("TRPS") at the age of two. TRPS is an inheritable genetic disorder characterized by craniofacial and skeletal abnormalities. Symptoms include lack of hair on the scalp, a bulbous tip of the nose, and general delay in bone maturation in childhood, resulting in a short stature. People with TRPS generally experience problems of the joints including hip, back, knee, and foot, as well as arthritis and osteoarthritis.

Since being diagnosed with TRPS, Hash has undergone routine treatments to manage pain with joint dislocations. Hash began seeing rheumatologist Steven Neucks, M.D. in October 2009. Dr. Neucks prescribed Hash a series of medications and recommended pain management. Dr. Neucks completed a Medical Assessment of Ability to do Work-Related Activities (Physical) in November 2009. In this assessment, Dr. Neucks opined that Hash could occasionally lift and carry up to 10 pounds, could sit for 1 hour at a time for a total of 3 hours in an 8-hour workday, and could only stand or walk up to one hour in a workday.

Dr. Neucks completed a Medical Source Statement About What the Claimant Can Still Do Despite Impairment(s) in October 2010. Here, Dr. Neucks opined that Hash's pain was severe enough to constantly interfere with attention and concentration. He further limited Hash to sitting for 30 minutes at one time for a total of 3 hours in a workday, and could only stand or walk for 15 minutes for a total of 1 hour in a workday.

Hash was evaluated for a consultative examination in January 2009 by Paul Glass, M.D. of the Indiana State Agency. Dr. Glass found that all range of motion testing was within the

normal limits. In February 2009, another state agency physician, Dr. Lavallo reviewed Hash's record and determined that Hash did not have a severe impairment. Dr. Ruiz with the state agency affirmed Dr. Lavallo's assessment. Neither Dr. Ruiz, nor Dr. Lavallo examined Hash.

After the hearing the ALJ requested that Hash undergo a consultative examination with Alois Gibson, M.D., which was conducted in November 2010. Dr. Gibson found that Hash's range of motion in his lower extremities were normal, but was limited in his bilateral shoulder range of motion. Dr. Gibson also noted that Hash appeared to exhibit more range of motion upon dressing than on examination. In the Medical Source Statement, Dr. Gibson opined that Hash could stand and sit for 8 hours in a workday, but that Hash could only walk for 1 hour at one time for a total of 4 hours in a workday. In December 2010, the ALJ requested clarification from Dr. Gibson regarding Hash's reaching abilities. In response, Dr. Gibson opined that Hash should not be involved in overhead reaching.

### III.     Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[1] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. This court may not reweigh the evidence or substitute its judgment for that of the ALJ. Overman v. Astrue, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed,

the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

The ALJ first determined that Hash met the insured status requirements of the Act through June 30, 2010. Applying the five-step analysis, the ALJ found at step one that Hash had not engaged in substantial gainful activity since the alleged onset date of July 15, 2008. At step two, the ALJ found that Hash had the following severe impairment: trichorhinophalangeal syndrome ("TRPS").

At step three, the ALJ determined that Hash does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that Hash had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ found that Hash can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently; he can sit and stand for 8 hours total each and can walk up to 4 hours; he can frequently stoop, crouch, crawl, kneel, and climb ramps and stairs; continuously balance; and he should not climb ladders, ropes, or scaffolds; Hash can perform frequent bilateral handling and fingering and continuous feeling; he should not perform overhead work bilaterally and there should be no more than occasional full extension of the arms bilaterally; Hash is also limited to frequent exposure to hazards such as unprotected heights or unguarded dangerous moving machinery.

At step four, the ALJ determined that Hash was unable to perform any past relevant work. At step five, the ALJ determined that, considering Hash's age, education, work experience and RFC, there were jobs that existed in the national economy that Hash could perform. Therefore, the ALJ determined that Hash was not disabled.

## V.     Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Hash was not disabled. *Dixon*, 270 F.3d at 1176. Hash raises two arguments on review: 1) the ALJ failed to create an accurate RFC assessment that incorporated all of Hash's impairments; and 2) the ALJ's credibility finding fails to properly incorporate Hash's subjective complaints of pain.

With regard to the RFC, the ALJ relied on the assessment of Dr. Gibson who examined Hash and provided an evaluation after the hearing upon the request of the ALJ. The ALJ presumably requested an additional consultative examination to develop a full and fair record for Hash as there was either inconsistency in the evidence or there was not enough information in the medical record to make a determination on disability. 20 C.F.R. 416.919a(b). The RFC assessment is nearly identical to the opinion of Dr. Gibson. [R. at 338-49] Hash does not challenge Dr. Gibson's findings, only that the ALJ should have relied on the opinion of Hash's treating physician, Dr. Neucks. However, the ALJ properly articulated his reasoning for according little weight to Dr. Neucks' assessment, particularly that the assessment was inconsistent with examination findings and there was no evidence of objective medical testing to support Dr. Neucks' opinion. [R. at 26.]

Hash contends that the ALJ committed reversible error by finding that Hash was capable of performing light work, arguing that restricting Hash to walking up to 4 hours a day is a

6

conflict with that finding. The Court finds no error. Light work is defined in part as "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing . . . light work, you must have the ability to do substantially all of these activities." 20 C.F.R. 404.1567. The regulations do not define how much walking is "a good deal," but even if 4 hours a day is insufficient, the regulations provide that the person be capable of walking *or* standing *or* sitting. The ALJ determined, based on Dr. Gibson's assessment, that Hash could stand and sit 8 hours in a work day. The remainder of the RFC accounts for Hash's ability to perform substantially all of the activities listed for light work.

      Hash next argues that the ALJ's credibility finding is not supported by substantial evidence and fails to properly incorporate Hash's subjective complaints of pain. Hash's argument focuses on substantial evidence to support a finding of disability. However, the standard is not whether there is substantial evidence to support a finding of disability, but whether there is substantial evidence to support the ALJ's decision. *Dixon*, 270 F.3d at 1176. The Court cannot reweigh the evidence and substitute its own judgment for that of the ALJ. *Overman*, 546 F.3d at 462. Even if there were substantial evidence to support Hash's position, the Court has a duty to determine whether there is substantial evidence to support the ALJ's decison. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). The ALJ discussed Hash's complaints of pain and pain management treatments. [R. at 20-22.] In fact, most of Hash's citations to the record of his complaints for pain were also cited in the ALJ's decision. The ALJ discussed that, based on the record, Hash was prescribed mild pain medication which has been effective in controlling Hash's pain and symptoms. [R. at 23.] Dr. Gibson, likewise, did not find Hash's complaints of pain disabling. [*See* R. at 338-49.]

7

The Court finds that the ALJ's decision is supported by the medical record, sufficiently articulated, and provides an accurate and logical bridge from the evidence to his conclusions. Therefore, substantial evidence supports the ALJ's decision.

### VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Hash is not disabled and the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED** and that Plaintiff's motion for summary judgment be **DENIED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 07/15/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Frederick J. Daley, Jr.
DALEY DEBOFSKY & BRYANT
fdaley@ddbchicago.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov